## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Southern Division)

| | |
|---|---|
| DOROTHY GALES<br><br>*on her own behalf and on behalf of*<br>*all others similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>CAPITAL ONE, N.A.<br>D/B/A CAPITAL ONE AUTO FINANCE<br><br>Defendant. | <br><br><br><br><br><br><br><br>Case No. 8:13-cv-01624-WGC |

### MEMORANDUM OF LAW IN SUPPORT OF FINAL SETTLEMENT APPROVAL

Named Plaintiff Dorothy Gales submits this Memorandum in Support of Final Approval of the Settlement Agreement.  The proposed settlement, as set forth in the Settlement Agreement (ECF #66-3), is between Named Plaintiff, all Class Members and Defendant Capital One, N.A. d/b/a Capital One Auto Finance ("Capital One") in a consumer class action lawsuit.   The proposed settlement is on behalf of a consumer Class whose motor vehicles were repossessed by Capital One and sold at a private sale at Manheim Baltimore Washington Auction's Tuesday Sale through allegedly improper procedure under Maryland law.

On March 31, 2015 (ECF #67), the Court granted Named Plaintiff's Motion for Preliminary Approval of a Settlement Class pursuant to FED. R. CIV. P. 23(b)(3) defined as:

> All individuals:   (a) who financed the purchase of a vehicle through a Retail Installment Sale Contract that elects Subtitle 10 of Title 12 of Maryland's Commercial Law Article; (b) whose vehicles were repossessed by Capital One; (c) whose vehicles were sold at Manheim Baltimore Auction at a "Tuesday Sale" prior to

March 1, 2013; and (d) where the Retail Installment Sales Contract was not satisfied more than six months prior to April 25, 2013.

The Monetary Relief Subclass shall be defined as follows:

All individuals:  (a) who meet the definition of the Settlement Class; and (b) for whose Automobile Loan Accounts Capital One collected Amounts in Excess of the Original Principal Balance.

The settlement provides for both equitable and monetary relief.  The terms of the proposed Settlement are on file with the Court (ECF #66-3) and are detailed more fully in Part I(B) of this Memorandum

In accordance with the Court's Order Preliminarily Approving the Class Action Settlement and FED. R. CIV. P. 23, the Settlement Administrator began providing notice to Class Members by mail on or about April 30, 2015.  ECF #71 at ¶ 15.  No Class Members have objected to the settlement and only one (1) Class Member opted out.  *Id.* at ¶ 19.

## I.    HISTORY OF THE LITIGATION

### A.    Background

This Settlement resolves a consumer class action lawsuit brought on behalf of a Class against a consumer finance company – Capital One.  Named Plaintiff alleged in her First Amended Class Action Complaint (ECF #33) that Capital One violated Maryland statutory and common law by selling repossessed motor vehicles at a private sale and failing to issue notices in connection with these private sales that disclosed all of the information required under *Maryland's Credit Grantor Closed End Credit Provisions*, MD. CODE ANN., COMM. LAW § 12-1001, *et seq.* ("CLEC").  Due to the alleged improper notice, Named Plaintiff and the Class did not have all the information necessary to protect property interests in their motor vehicles. Capital One denied all of Named Plaintiff's claims, any wrongdoing and any liability to Named

Plaintiff or to any Class Members in any amount.

### B.     Litigation and the Settlement

The Settlement Agreement achieves a superior result for the Class.  The Class arrived at a final settlement with Capital One after: (1) protracted litigation; (2) extensive research into the applicable law and factual issues; (3) broad discovery; and (4) lengthy and arduous arms-length negotiation taking place over the course of several months with the assistance of multiple settlement conferences conducted at the United States District Court for the District of Maryland.[1]   Following almost two (2) years of litigation and negotiations, Named Plaintiff, through Class Counsel, and Capital One, crafted an agreement that requires Capital One to waive all outstanding balances and/or deficiencies that are owed in connection with the Class Member Accounts and to dismiss with prejudice any pending lawsuits based on such deficiencies or balances.  ECF #66-3 at ¶ 16(a)(i) and (ii).  The value of these deficiencies and balances totals many millions of dollars.  The Settlement Agreement also requires Capital One to request that the national credit reporting agencies report the Remaining Loan Balance for Class Member Accounts as zero dollars ($0.00) and "paid as agreed."  *Id.* at ¶ 16(a)(iii).  This equitable relief is provided to all Class Members.

As a result of this lawsuit, Capital One also agreed to create a Settlement Fund of four million seven hundred twenty four thousand six hundred thirty eight dollars and sixty six cents ($4,724,638.66) - which includes four million four hundred thousand dollars ($4,400,000) from the original Settlement Fund in addition to three hundred twenty four thousand six hundred thirty

---

[1] At the end of the last full day of settlement conferences, the parties agreed to an outline of terms that resolved all of the claims alleged in the First Amended Class Action Complaint for every Class Member pending implementing the terms into a formal Settlement Agreement and seeking approval from the Court.

eight dollars and sixty six cents ($324,638.66) in Supplemental Amounts.[2]  *Id.* at ¶ 16(b).  The

$4,400,000.00 originally deposited into the Settlement Fund and $4,724,638.66 after the

Supplemental Amounts is greater than the amounts collected from Class Members on their Class

Member Accounts in excess of the principal amount of the loan.  *Id.* at ¶ 9.  Capital One will

deposit this Supplemental Amount and it will become a part of the Settlement Fund no later than

ten (10) business days after entry of the Final Approval Order.  *Id.* at ¶ 16(b)(i).

All Class Members entitled to a payment from the Settlement Fund will automatically

receive a check from the Settlement Fund without the need to file a claim form.  In the truest

sense, the Settlement, is not illusory for the Class Members, and lucrative only for the lawyers.

*Mazola v. The May Department Stores Company*, CA 97 CV 10872-NG, pp. 8-9 (D. Mass).

Consumers will receive real dollars and real relief.  By all accounts, it is an excellent settlement.

In addition, recognizing that some Class Members can no longer be located and that there

may be some Class Members who fail to cash their checks, the Settlement Agreement provides

that any monies that remain unclaimed or undistributed from the Settlement Fund, after all Class

Members who can be located are paid, will be given to a *cy pres* fund and, in turn distributed to a

non-profit 501(c)(3) institution agreed to by the Parties and approved by the Court.  ECF #66-3

at ¶ 20.  Class Counsel will file a Motion to Approve *Cy Pres* Recipient after the amount of the

*cy pres* fund is known.

To facilitate settlement, the parties requested that the Court appoint BrownGreer PLC as

Settlement Administrator to affect Class Notice and disburse the Settlement Fund.  Brown Greer

PLC originally mailed out eight thousand four hundred seven (8,407) Notices to the nine

---

[2] This amount will not be reduced by an incentive award payment or the costs of the Settlement
Administrator as Capital One has agreed to pay these amounts in addition to the Settlement Fund.

thousand two hundred seventy two (9,272) Class Members (Class Members containing identical addresses were mailed only one notice).  After the first mailing, two thousand sixty four (2,064) Notices were returned as undeliverable.  ECF #71 at ¶ 15.  BrownGreer PLC then used the social security numbers of each Class Member with an undeliverable address and used the United States Postal Service national change of address database or other available data tracing services to identify the next best possible home address for each Class Member.  *Id.* at ¶ 16.  BrownGreer PLC forwarded one thousand five hundred ninety seven (1,597) Class Notices to Class Members that did not receive the fist attempted mailing after updating address information through this protocol.  *Id.* at ¶ 17.  In all, BrownGreer PLC was successful in providing eight thousand five hundred six (8,506) of the nine thousand two hundred seventy two (9,272) Class Members and seven thousand one hundred sixty seven (7,167) of the seven thousand four hundred twenty three (7,423) Class Member Accounts individual Mailed Notices by US Mails.  *Id.* at ¶ 18 and Table 5. This is a superior result considering the number of Class Members, Class Member Accounts and the age of the transactions involved.

As set forth in the Declaration of Cory L. Zajdel, Class Counsel spent numerous additional hours reviewing records and talking to the parties to this action, as well as others associated with this action to insure that notice was adequate and reached the maximum number of Class Members.

Finally, Named Plaintiff notes that since the mailing of the Class Notice, Class Counsel has interacted (both over the telephone and in writing) with more than two hundred fifty (250) Class Members.  Class Counsel has provided advice to Class Members on whether they are entitled to a check from the settlement fund, clarified the terms of the Settlement Agreement, answered questions relating to the protocol for receiving a settlement check, explained the non-

5

monetary benefits provided by this Settlement and updated Class Member addresses.   Class

Counsel expects that involvement and interaction with the Class will continue until and beyond

the date of full distribution of the Settlement Fund because Class Members will inevitably have

issues with the checks that are distributed and with the removal of the trade line from each

respective credit report.

It goes without saying that the settlement structure is the product of serious, informed,

non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential

treatment to the Named Plaintiff or segments of the Class, and falls well towards the upper end of

the range of reasonable settlements.   Thus, the compromise set forth in the Settlement

Agreement, especially because it includes monetary, equitable and *cy pres* remedies for the

Class, is believed by Class Counsel to be fair, adequate, and reasonable.   As a result, Class

Counsel represents that the Settlement is favorable for all Class Members and urges approval of

the Settlement.

## II.   THE APPLICABLE LEGAL STANDARD TO BE UTILIZED IN CONSIDERING CLASS ACTION SETTLEMENT APPROVAL

Federal Rule 23 states that "[t]he court must direct notice in a reasonable manner to all

class members who would be bound by [a proposed settlement and] may approve it only after a

hearing and on finding that it is fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(1) and

(e)(2).   As discussed above, Class Counsel and BrownGreer PLC have ensured that the

individual Mailed Notice was provided to 91.74% of all Class Members and 96.55% of all Class

Member Accounts.   ECF #71 at ¶ 18 and Table 5.   The only issue remaining with respect to this

Motion is whether the Settlement Agreement is "fair, reasonable and adequate" and in the best

interest of the Class.

Approval of a proposed class action settlement by a court is discretionary. *Flinn v. FMC Corp.*, 528 F.2d 1169 (4th Cir. 1975), *cert. denied*, 424 U.S. 967 (1976); *see Girsch v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975); *Ace Heating & Plumbing Co. v. Crane Co.*, 453 F.2d 30, 34 (3d Cir. 1971). There is, however, a "strong initial presumption that the compromise is fair and reasonable." *Rolland v. Cellucci*, 191 F.R.D. 3, 6 (D. Mass. 2000); *South Carolina Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991). The law favors settlement and "[i]t is indeed the preferred means of dispute resolution, particularly in complex class action litigation such as this." *In re Washington Public Power Supply System Securities Litigation*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989), *aff'd*, 955 F.2d 1268 (9th Cir. 1992).

A court should approve a settlement which is "fair, adequate, and reasonable" to the members of the classes. *In re Jiffy Lube Securities Litigation*, 927 F.2d 155 (4th Cir. 1991); *Troncelliti v. Minolta Corporation*, 666 F. Supp. 750 (D. Md. 1987); *Walsh v. Great Atlantic and Pacific Tea Company. Inc.*, 726 F.2d 956, 965 (3d Cir. 1983). Courts therefore approve class settlements which are reasonable compared to the likely results of litigation, *Shlensky v. Dorsey*, 574 F.2d 131, 147 (3d Cir. 1978), and which result from *good faith*, arm's length negotiations. *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982), *cert. denied*, 464 U.S. 818 (1983).

In order to determine if the Settlement Agreement represents a compromise that is "fair, reasonable and adequate" this Court "is only called upon to consider and weight the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974) (quoting *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971). Along these lines, courts have considered several factors in determining whether a proposed class settlement is or is not "fair, reasonable, and adequate." *See e.g. Troncelliti v. Minolta Corp.*, 666

F. Supp. 750, 752-54 (D. Md. 1987); *In Re Montgomery County Real Estate Antitrust Litigation*, 83 F.R.D. 305, 315-16 (D. Md. 1979).[3]   In the most commonly cited of the cases which established a framework for class action settlement evaluation, *City of Detroit v. Grinnell Corp.*, 495 F.2d at 463, the Second Circuit identified nine such factors as relevant in determining the fairness of settlement:

> (1) the complexity, expense and likely duration of the litigation . . .; (2) the reaction of the class to the settlement . . .; (3) the stage of the proceedings and the amount of discovery completed . . .; (4) the risks of establishing liability . . .; (5) the risks of establishing damages . . .; (6) the risks of maintaining the class action through the trial . . .; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . .; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

The Fourth Circuit relied on and endorsed substantially the same factors in *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173-74 (4th Cir. 1975).  *See also In re Jiffy Lube Securities Litigation*, 927 F.2d 155, 158-159 (4th Cir. 1991); *In re A.H. Robins Co.*, 880 F.2d 709, 748-49 (4th Cir. 1989);  *Horton v. Merrill Lynch*, 855 F. Supp. 825 (E.D.N.C. 1994); *South Carolina Nat. Bank v. Stone*, 139 F.R.D. 335, 338-339 (D.S.C. 1991); *In re Montgomery County Real Estate Antitrust Litigation*, 83 F.R.D. 305, 315-316 (D. Md. 1979); *In re Mid-Atlantic Toyota Antitrust Litigation*, 605 F. Supp. at 442-43. *Cf DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171 (8th Cir. 1995) (approving *Grinnell* factors in approval of class action settlement).

## III.    THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

This settlement is justified under the criteria set forth in *City of Detroit v. Grinnell* as endorsed and adopted by the Fourth Circuit in *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173-74 (4th Cir. 1975).

---

[3] *See also Malchman v. Davis*, 706 F.2d 426, 433-34 (2d Cir. 1983); *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983); *Officers for Justice v. Civil Service Commission*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983); and *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).

## A.       The Complexity, Expense and Likely Duration of the Litigation

The first *Grinnell* factor, the complexity, expense and likely duration of the litigation, favors approving this Settlement Agreement.  Although the trial of this case certainly would be manageable and would be superior to other means of adjudicating the controversy, the issue here is the extent to which the anticipated complexity and costs of proceeding to trial favor settlement. In this case, the anticipated complexity, costs, and time necessary to try this case substantiate the fairness of the settlement.

Among other issues, this case presents complex issues relating to CLEC including standing, statute of limitations, damages and liability.  Ultimate success in this case depended almost entirely on how this Court interpreted the controlling statutory language.  Had this matter proceeded to trial, Capital One would have attempted to present evidence to demonstrate that the post-sale accounting provided to Class Members were not deficient.  Capital One also would have attempted to demonstrate that (a) the statute of limitations applicable to this action was more limited than the alleged settlement Class, (b) the Class suffered no actual damages, and (c) Named Plaintiffs' interpretation of CLEC is wrong and out of line with industry practice. Although Named Plaintiff and Class Counsel are confident in their reading of the applicable law, it is clear that alternative interpretations of the statute are at least possible. *Bediako v. American Honda Finance Corp.,* 850 F. Supp. 574 (D. Md. 2012), *aff'd*, 2013 U.S. App. LEXIS 15837 (4th Cir. Aug. 1, 2013), *rev'd in part*, *Patton v. Wells Fargo*, 85 A.3d 167 (Md. 2014).  There is no guarantee that the Court or the jury would have agreed with the Class.

The expense of taking this case through trial against Capital One would have been considerable.  Named Plaintiff would have to undertake a additional independent research, a substantial amount of additional discovery (including many important depositions) and

significant motions practice including a motion to certify the class.   Trial preparation would require great effort and expense. Named Plaintiff would incur considerable expert expenses, relating in part to the determination of damages.   Moreover, the Class would have been responsible for the cost of notice and numerous witness fees.   Although Named Plaintiff anticipated presenting her case at trial in less than one week, she realistically estimated that Capital One would take at least that long given the multiplicity of their defenses.

Avoiding the delay and risk of protracted litigation is a primary reason for counsel to recommend and the court to approve a settlement. *Protective Committee for Indep. Stockholders of TMT Trailer Ferry v. Brooks*, 390 U.S. 414, 424 (1968) (stating that a judge must consider "the [complexity], expense, and likely duration" of the litigation). The claims of the Named Plaintiff were investigated and pending for more than two (2) years to reach the resolution and Settlement Agreement before this Court.   It is likely that if this case were to proceed through class certification briefing, trial and appeal, the litigation would continue for at least another three (3) years.   Named Plaintiff believes this factor weighs in favor of approving the Settlement Agreement because as time passes, Class Members are harder to locate and the amount actually provided back to the class decreases.

**B.      The Reaction of the Classes to the Settlement is Favorable**

Pursuant to this Court's Preliminarily Approval Order (ECF #67) and Federal Rule 23(b)(3), the Settlement Administrator mailed Class Members individual notices in the form and manner approved by the Court and published a website explaining the settlement and linking numerous case related documents including the individual notice notifying each Class Member about their ability to opt-out or object to the settlement.   ECF #71 at ¶¶ 8 and 15-8.   Class Counsel answered calls from more than two hundred fifty (250) Class Members.   During these

calls, Class Members were generally inquiring into what benefit they will receive from this Settlement Agreement and whether it was in their best interest to remain a Class Member. The deadline for filing an objection to or opting out from the settlement passed and no Class Members filed an objection to the Settlement Agreement. Class Counsel does not expect that any Class Members will attempt to file a late objection based on the feedback received and interactions with Class Members to date all in support of the Settlement Agreement.

Remarkably, in a class action with seven thousand four hundred twenty three (7,423) Class Accounts and nine thousand two hundred seventy two (9,272) Class Members, there were no objections to the Settlement Agreement and only one (1) Class Member opted out of the Settlement Agreement. *Id.* at ¶ 19 and Table 6. The Class has spoken with their silence. The Class favors the resolution of this case as outlined in the Settlement Agreement. Where, as here, there is *unanimous* support of a proposed settlement by the beneficiaries and only 1 Class Member opted-out of 7,423 Class Accounts and 9,272 Class Members, it is persuasive evidence that the proposal is fair, reasonable and adequate. *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 459 (D.N.J. 1997) (and cases cited therein); *In re Surgical Laser Technologies Sec. Litig.*, 1992 U.S. Dist. Lexis 16724 at * 4-5 (E.D. Pa. 1992) (and cases cited therein).

### C.    The Stage of the Proceedings and the Amount of Discovery Completed

The third *Grinnell* factor, the stage of the proceedings and the amount of discovery completed, likewise supports the fairness of this settlement. The case is now more than two (2) years old and, in that time, Class Counsel conducted extensive research into the applicable law with respect to the claims and defenses and with respect to class certification, and reviewed an extensive body of Capital One's documents relevant to the issues raised in the Complaint. Class

Counsel's independent investigation and early contact with Class Members were also extensive. In addition, Class Counsel reviewed internal Capital One documents as well as three hundred seventy five (375) randomly sampled Class Member's files to determine if the data contained on the Class List was accurate. Moreover, Class Counsel took the deposition of Manheim Baltimore Washington to determine whether the "Tuesday Sale" was a private sale and on what date any changes were made to Manheim's "Tuesday Sale" that would make it a public sale. This information helped identify the last sale that met the definition of the Class in this litigation. Given the amount of information that Class Counsel and Capital One have exchanged and that Class Counsel has obtained from a third-party, at this point, Class Counsel believes that the settlement is fair, adequate and reasonable.

### D. The Risks of Establishing Liability and Damages

The fourth and fifth *Grinnell* factors, the risk of establishing liability and the risks of establishing damages supports final approval of the Settlement. As set forth in this Memorandum and the Settlement Agreement, Capital One contests liability and damages in this case. More specifically, Capital One contends that it cured any violation of CLEC and is not liable for any further damages. CLEC § 12-1020 (providing a credit grantor the ability to cure). Recently, this Court dismissed with prejudice the class action claims of a Maryland consumer alleging that a finance company violated his statutory rights because the credit grantor purportedly cured the violation in accordance with the statutory requirements of § 12-1020. *Askew v. HRFC, LLC*, 2014 U.S. Dist. LEXIS 40088 (D. Md. Mar. 25, 2014), *appeal docketed*, Case No. 14-1384 (4th Cir. Apr. 22, 2014) (oral argument granted and scheduled for Sept. 15, 2015). Capital One would argue that by providing letters along with updated post-sale accounting notices shortly after the filing of the First Amended Class Action Complaint, Capital

One could defend the case and restrict Named Plaintiff from any liability award.

In addition, this Court originally denied a motion to dismiss but subsequently granted a motion for judgment on the pleadings in a class action alleging that a finance company failed to provide adequate post-sale notice to a consumer under CLEC after a private sale occurring at Manheim Baltimore Washington Auction's "Tuesday Sale." *Scott v. Nuvell Financial Servs., Inc.*, 789 F. Supp. 2d 637, 638 (D. Md. 2011). The United States Court of Appeals for the Fourth Circuit overturned the judgment after the legal question was certified to the Court of Appeals of Maryland and remanded the case for further proceedings after finding that the "Tuesday Sale" was a private sale. *Gardner v. Ally Financial, Inc.*, 61 A.3d 817 (Md. 2013). Upon remand, the District Court judge subsequently granted the credit grantor's motion for summary judgment on the theory that the named plaintiff in that case had not suffered any actual damages and was not entitled to any statutory damages. *Scott v. Nuvell Financial Services*, 2013 WL 6909518 (D. Md. Dec. 31, 2013). Capital One claims in this case that thousands of Class Members did not suffer any actual or statutory damages and therefore would not be entitled to a judgment as to any relief should this case continue to trial. *See also Bediako v. American Honda Finance Corp.*, 850 F. Supp. 574 (D. Md. 2012), *aff'd*, 2013 WL 3943183 (4th Cir. Aug. 1, 2013) (finding that a consumer can no longer pursue a CLEC claim when the creditor has waived any obligation of the borrower under the loan and the borrower did not pay more than the principal amount of the loan). The *Askew, Scott and Bediako* cases are good examples of the all or nothing stakes of class action litigation and the risks associated with establishing liability and damages under CLEC as is required in this litigation.

Nonetheless, the Settlement Agreement in this case includes all Class Members regardless of the defenses Capital One claimed were available to it through litigation.

13

Accordingly, for many thousands of Class Members, this Settlement Agreement potentially represents the only opportunity to participate in this litigation. Capital One claimed that more than fifty percent (50%) of all Class Members could have been potentially barred from participating in this litigation had the parties not resolved the case and entered into the Settlement Agreement.

Even if the Court agrees with Named Plaintiffs' interpretation of CLEC and Maryland law, any damages analysis compiled by Named Plaintiffs would be contested. The Settlement Agreement in this case avoids these issues, provides the Class with a substantial recovery of both monetary and equitable damages without the need for a full trial of the issues and without the need to resolve disputes relating to Class membership.

**E.      The Risks of Maintaining the Class Action through the Trial**

The sixth *Grinnell* factor does not favor or disfavor settlement of this litigation. This Court has made no determinations regarding the certifiability of the legal claims alleged in this litigation. Class certification briefing always contains risks. There are risks that the Class will not be certified, will be limited in scope or in duration and certain claims precluded by arbitration clauses and statute of limitations. But these risks do not outweigh the certifiability of the Class.

The Class has issues similar to those litigated previously in this Court but never determined on contested class certification briefing. Nonetheless, this Court has certified settlement classes in many other CLEC repossession cases. *Muga v. Branch Banking and Trust Company*, Civil Action No. 1:10-cv-890-PWG (D. Md.) (settled August 2011) (consumer class action challenging vehicle repossession practices); *Brooks v. Condor Capital Corp.*, Civil Action No. 1:10-cv-1376-BEL (D. Md.) (settled January 2012) (same); *Veiga v. SunTrust Bank*, Civil Action No. 1:09-cv-2815-PWG (D. Md.) (settled February 2011) (same); *Thomas v.*

14

*CitiFinancial Auto Credit, Inc.*, Civil Action No. 1:10-cv-528-JKB (same); *Watts v. Capital One Auto Finance, Inc.*, Civil No. 07-cv-03477-CCB (D. Md.) (same); *Shelton v. Crescent Bank & Trust*, Case No. 08-cv-01799-RDB (D. Md.) (same); *Baker v. Sunshine Financial Group, LLC.*, 11-02028-PWG (D. Md.) (same); and *Crowder v. AmeriCredit Financial Services, Inc.*, Civil No. 06-cv-707-JFM (D. Md.) (same).  In addition, all Class Members can argue that the conduct causing damages was conducted uniformly through paper violations.   Meaning all of the damages stem from violations that can be proven from forms used by Capital One.   Moreover, Capital One has already proven that it can identify the Class Members through its sophisticated computer system and that the Class is numerous.  For these reasons, the risks of maintaining the class action through trial does not weigh in favor of or against approving the settlement.

### F.    The Ability of the Defendant to Withstand a Greater Judgment

The seventh *Grinnell* factor, the ability of the defendant to withstand a greater judgment, is neutral. This Settlement does not tax Capital One's net worth.  There is no doubt that Capital One can pay a judgment well in excess of the Settlement Fund proposed in the Settlement Agreement.  The primary remedy available to the Class in this litigation under CLEC is the forfeiture of interest, costs, fees and other charges and the inability to obtain a deficiency judgments.  CLEC § 12-1018 and § 12-1021.  While the ultimate judgment in this case if the Class was certified and litigated through trial may have a value greater than the Settlement Agreement, Capital One would not be required to pay out all of these amounts to Class Members under CLEC.  Accordingly, since the affirmative obligation to pay out damages under CLEC are more limited than the declaratory and equitable relief available, it is unlikely that this litigation would result in a judgment so large that Capital One would be unable to pay.

Even given the inherent risk of the litigation, however, Class Counsel was able to secure

a significant monetary recovery for the Class totaling more than $4,724,638.66 and a waiver of all amounts claimed owed for each Class Member Account regardless of whether that amount related to interest or principal.  All forms of recovery will be distributed in a streamline process without the need to submit a claim form.

### G.   The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Range of Reasonableness of the Settlement Fund to a Possible Recovery in Light of All the Attendant Risks of Litigation

Finally, the eighth and ninth *Grinnell* factors, the range of reasonableness of the settlement in light of the best possible recovery and in light of all the attendant risks of litigation, both support approval of the proposed Settlement.  Indeed, as was noted by Judge Moore in *Grinnell*, 495 F.2d at 455 n.2, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."  The Fourth Circuit agreed that a settlement may still be fair, reasonable and adequate even though a settlement recovers only a small portion of the potential recovery.  *Flinn v. FMC Corp.*, 528 F.2d at 1173-74 (stating the fact that a "settlement 'may only amount to a fraction of the potential recovery' will not *per se* render the settlement inadequate or unfair." *See also In re Anthracite Coal Antitrust Litigation*, 79 F.R.D. 707, 714 (M.D. Pa. 1978); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 618 (N.D. Cal. 1979).

In this case, the settlement represents more than a small portion of the potential recovery. As noted, the settlement confers a substantial cash benefit upon the Class valued at $4,724,638.66 and equitable relief for each Class Member eliminating any debts owed to Capital One (totaling many millions of dollars) along with corrected credit reporting.  In reaching terms on a settlement, Class Counsel faced a number of difficult and novel legal questions involving, *inter alia*, proof that the post-sale accountings were deficient under CLEC, standing of Named

16

Plaintiff, a creditor grantor's right to cure (CLEC § 12-1020), applicability of the deficiency judgment relief, applicable statute of limitations and other issues relating to establishing liability and damages at trial.

To determine the reasonableness of the Settlement Agreement in this action, this Court need only compare it to a recent settlement approved by this Court alleging post-repossession notice violations under CLEC.  In *Smith v. Toyota Motor Credit Corp.*, Case No. 12-cv-2029-WDQ (D. Md.) (final approval order entered on Oct. 2, 2014 at ECF #53), consumers brought a class action lawsuit against a national motor vehicle finance entity alleging that it failed to provide adequate post-repossession notice to its customers under CLEC related to private sales. The parties agreed to a class-wide settlement that included the following material terms:  (1) three (3) year class period; (2) paid more than the principal amount of the loan; (3) waiver of deficiency balance; (4) dismissal of collection actions; (5) deletion of trade line from credit report; (6) settlement fund of four hundred twenty five thousand dollars ($425,000.00); (7) submission of claim form to receive any amount from settlement fund; (8) attorneys' fees of forty nine and four tenths percent (49.4%) of the settlement fund; (9) cost of settlement administrator reducing the settlement fund; and (10) incentive award reducing the settlement fund.  None of these ten material terms of the *Smith* settlement agreement are better than the terms of the pending litigation's Settlement Agreement.  The following chart compares the terms of the *Smith* settlement from the Settlement Agreement in the pending litigation:

| *Smith v. Toyota Motor Credit Corp.* | *Gales v. Capital One, N.A.* |
|---|---|
| 3 year class period prior to Complaint | Satisfaction of loan six months prior to Complaint |
| Must have paid more than the principal of loan | No limitation on Class Membership |
| Waiver of deficiency balance | Waiver of deficiency balance |
| Dismissal of collection actions | Dismissal of collection actions |
| Trade line deletion from credit report | Trade line improvement on credit report |
| $425,000 settlement fund (2,649 accounts) | $4,724,638.66 settlement fund (3,118 accounts) |
| Claim form submission | Checks issued automatically |
| 49.4% attorney's fees | 33.33% attorney's fees |
| Class pays the costs of settlement administrator | Class does not pay settlement administration |
| Class pays incentive award | Class does not pay incentive award |

Three elements of these settlements are worth further development. First, by including all consumers even those that did not pay more than the principal amount of their loans, this Settlement Agreement was able to include an additional four thousand three hundred five (4,305) accounts that were specifically excluded from the *Smith* settlement allowing for many millions of dollars in additional deficiency balance waiver and credit repair. Second, the *Smith* class recovered $425,000 for 2,649 class accounts ($160.44 per class member) while the pending Settlement Agreement recovered $4,724,638.66 for 3,118 class accounts ($1,515.27) - almost ten (10) times the amount per Class Member Account. Finally, Class Members in the pending litigation stand to recover a greater percentage of the cash benefit of the Settlement because Class Counsel and Named Plaintiff were careful in negotiating the Settlement Agreement. The *Smith* settlement awarded attorney's fees of $210,000.00 or 49.4% of the settlement fund, incentive award of ten thousand dollars ($10,000.00) and unknown expenses of the settlement

administrator.   In all, the *Smith* class stood to recover less than fifty percent (50%) of the settlement fund (before accounting for the fact that each class member was required to submit a claim form to recover anything).   To the contrary, Class Members in the pending litigation stand to recover around sixty six and five tenths percent (66.5%) of the Settlement Fund.   The Settlement Agreement in the pending action is exceptional in comparison and certainly within the range of reasonableness previously approved by this Court.

Experienced counsel, who negotiated at arm's length and now possess all relevant information with *unanimous* approval from the Class now recommends the Settlement to the Court.   Both Named Plaintiff and Class Counsel along with Capital One recognize the risk of failure and the high costs attendant to continued litigation. The legal and factual difficulties that the Class foresee with respect to liability and damages already have been described.   Add to those predictable difficulties the unpredictability of class certification, dispositive motions and a complex jury trial – where witnesses or jurors could react in unforeseen ways – and the present settlement's benefit with a cash value of $4,724,638.66 and a total value including equitable relief many millions greater, the benefits of this Settlement to the Class becomes even more apparent.

Litigation risk, moreover, does not end with the trial. In this case, post trial motions and appeals would be almost a certainty.  History records numerous instances where favorable jury verdicts have been overturned by the trial court, a court of appeals, or even the Supreme Court.   As Judge Friendly noted of the vagaries of appellate review: "Platus warned long ago 'what a ticklish thing it is to go to law,' and the ticklishness does not diminish as the pinnacle is reached."  *Newman v. Stein*, 464 F.2d 689, 695 (2d Cir.), *cert. denied*, 409 U.S. 1039 (1972).

IV.     **CONCLUSION**

For the reasons set forth in this Memorandum, Named Plaintiff and Class Counsel request that the Court hold that the proposed settlement is fair, reasonable and adequate and in the best interest of the Class.

Respectfully submitted,

Z LAW, LLC

Dated: July 29, 2015                    By:_____/s/_____28191_____

Cory L. Zajdel, Esq. (Fed. Bar No. 28191)
301 Main Street, Suite #2-D
Reisterstown, Maryland 21136
(443) 213-1977
clz@zlawmaryland.com

**Attorney for Named Plaintiff and the Class**